**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**LORILLARD TOBACCO COMPANY,**

      **Plaintiff,**

v.                                                                    Case No.    05-71324

**KAMPOSH, LLC and KAMPOSH                      HONORABLE DENISE PAGE HOOD
ENTERPRISES, INC., a Michigan corporation
d/b/a CHESTERFIELD SHOP,**

      **Defendants.**

_____/

**ORDER**

**I.   INTRODUCTION**

This matter is before the Court on Plaintiff's Motion for Summary Judgment on the Issue of Liability, filed January 13, 2006. Defendants filed a Response on June 26, 2006 and Plaintiff filed a Reply on June 29, 2006. On February 2, 2006, the parties filed a Stipulation Regarding Liability, resolving most of the claims. The only remaining issue to be decided by the Court is whether or not Defendants' actions were willful or reckless as a matter of law.

Also before the Court is Plaintiff's Motion for a Protective Order to Preclude *Ex Parte* Communications with Lorillard Employees, filed on August 25, 2006. Defendants filed a Response on September 11, 2006 and Plaintiff filed a Reply on September 18, 2006.

**II.   STATEMENT OF FACTS**

Plaintiff, Lorillard Tobacco Company [hereinafter "Lorillard"], is the owner of the brand Newport®. (Compl. ¶ 10). Lorillard's leading brand, NEWPORT®, is the number one menthol

brand in the United States and the second most popular cigarette brand overall. *Id.* Lorillard and its predecessor entities have used the NEWPORT® trademark continuously since at least 1956. Defendants, Kamposh, LLC, and Kamposh Enterprises, doing business as Chesterfield Shop, are accused of selling counterfeit cigarettes using trademarks owned by Plaintiff. *Id*. ¶ 14. Plaintiff filed the Complaint on April 7, 2005 alleging (1) trademark counterfeiting and infringement in violation of 15 U.S.C. § 1114(1); (2) federal unfair competition and false designations of origin and false and misleading representations in violation of 15 U.S.C. § 1125(a); (3) trademark dilution, 15 U.S.C. § 1125(c); (4) unfair competition under common law; (5) statutory unfair competition in violation of M.C.L. 429.42(a); and (6) violation of the Michigan Consumer Protection Act, M.C.L. 445.903.

## III.   STANDARD OF REVIEW

Pursuant to Rule 56(c), summary judgment may only be granted in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the burden of showing no dispute as to any material issue. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974). A dispute must be evident from the evidence in order to deny such a motion. Such a dispute must not merely rest upon the allegations or denials in the pleadings, but instead must be established by affidavits or other documentary evidence. Fed.R.Civ.P. 56(e). When ruling, the Court must consider the admissible evidence in the light most favorable to the non-moving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

**IV.     APPLICABLE LAW & ANALYSIS**

    **A.     Summary Judgment - Willful or Reckless Conduct**

The parties have resolved all claims, except for the issue of whether Defendants' conduct was willful or reckless.

Under the Lanham Act, a plaintiff may elect to recover statutory damages instead of actual damages if the court finds the defendant's use of the counterfeit mark was willful. Whether defendant's use of the counterfeit mark was willful is central to the determination of the amount of statutory damages to which the plaintiff is entitled. The statute provides:

> (c) Statutory damages for use of counterfeit marks
>
> In a case involving the use of a counterfeit mark (as defined in section 116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of –
>
> > **(1)** not less that $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, distributed, as the court considers just; or
> > **(2)** *if the court finds that the use of the counterfeit mark was willful*, not more than $1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c) (emphasis added).

The Lanham Act does not define the term "willful," however, the Sixth Circuit has defined "willful," under the Lanham Act, for purposes of determining when to award attorney's fees. *Johnson v. Jones*, 149 F.3d 494, 503 (6th Cir. 1998). The Sixth Circuit held, "willful or bad faith infringement, so as to justify an award of attorney's fees, usually means passing off a product or service as another seller's better established one, or some other deliberate theft of a marketholder's

3

goodwill." *Id.* (internal quotations omitted), citing *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 964 (Fed.Cir. 1990). The First Circuit has also defined "willful conduct" in the civil context. *Thomsen v. U.S.*, 887 F.2d 12, 17 (1st Cir. 1989). The First Circuit held, "in the civil context, willful conduct denotes intentional, knowing and voluntary acts. It may also indicate a reckless disregard for obvious or known risks." *Id.* (internal citations omitted), quoting *Monday v. U.S.*, 421 F.2d 1210, 1215 (7th Cir. 1970).

Plaintiff argues that the Court should determine that Defendants willfully used a counterfeit mark as a matter of law. To support this contention, Plaintiff states that Defendants' business records indicate a sharp decline in the amount of Newport® King cigarettes purchased by Defendants immediately preceding the discovery of the counterfeit cigarettes. Plaintiff asserts that from March of 2003 to December of 2003 Defendants purchased 54 cartons of Newport® King cigarettes in the soft pack and in 2004 Defendants purchased 53 cartons of Newport® King cigarettes in the soft pack. (Pl's Mot. Summ. J, Ex. 16). In contrast, between January of 2005 and April of 2005, Defendants purchased only five cartons of Newport ® King cigarettes in the soft pack. *Id.* Plaintiff further states that between February 22, 2005 and April 19, 2005, Defendants purchased no cartons of Newport ® King cigarettes in the soft pack. *Id.* Plaintiff further argues that on March 30, 2005 and April 15, 2005, when the counterfeit cigarettes were confiscated, more than half of Defendants' total inventory of Newport® King cigarettes in the soft pack for the year were counterfeit. (Pl.'s Mot. Summ. J., Ex. 8, ¶¶ 4-5, Ex. 13, ¶ 3). Plaintiff contends that Defendants' reduction in purchases of Newport ® King cigarettes in the soft pack combined with the discovery that more than half of Defendants' inventory was counterfeit, shows that Defendants willfully used Plaintiff's mark.

4

Defendants contend that expert analysis was required to determine if the confiscated cigarettes were counterfeit. As such, Defendants could not be expected to know that the cigarettes were counterfeit absent some expert analysis. Defendants also argue that the evidence of purchasing patterns is not sufficient to support a finding of willfulness as a matter of law. (Defs.' Mot. For Summ. Disposition at 2).

Plaintiff further argues that, at a minimum, Defendants engaged in reckless conduct. However, 15 U.S.C. § 1117(c) specifically states that the standard for increasing damages owed is *willfulness* not *recklessness*.

Plaintiff also asserts that Defendants' Response to Plaintiff's Motion for Summary Judgment violated Federal Rule of Evidence 408 and the Rules of Civility by including the details of confidential settlement discussions. (Pl.'s Mot. For Protective Order at 1-2). Defendants contend that their Response to Plaintiff's Motion for Summary Judgment was not improper. (Defs.' Resp. To Pl.'s Mot. For Protective Order at 2). In the Response to Plaintiff's Motion for Summary Judgment, Defendants argue that Plaintiff's request for a determination of willfulness as a matter of law is contrary to the agreement of the parties. (Defs.' Resp. To Mot. For Summ. Disposition at 3). Defendants assert that during settlement negotiations the parties agreed that Plaintiff would not seek enhanced damages during the negotiations. *Id.* Defendants further argue that Plaintiff's attempt to seek summary judgment on the issue of willfulness is premature and contrary to the agreement of the parties. *Id.*

Federal Rule of Evidence 408 excludes evidence of compromise and offers to compromise to prove liability for or invalidity of a claim. F.R.E. 408. In the instant case, Defendants did not offer details of the settlement negotiations to show willfulness, but merely offered such evidence to

5

show an agreement between the parties not to seek enhanced damages.  Moreover, the Court has not considered this information in the determination of willfulness.  The Court has reviewed the Civility Principles of the United States District Court of the Eastern District of Michigan and, absent a more specific reference to the Civility Principles, the Court cannot find that Defendants are in violation.

Upon review of the submissions, the Court finds that there are genuine issues of material fact. Plaintiff's evidence may *suggest* that Defendants' conduct was willful, however, Plaintiff has failed to show that Defendants knew the cigarettes were counterfeit or that Defendants sold the counterfeit cigarettes with knowledge that the cigarettes were counterfeit.  Without such showing, the Court cannot determine that Defendants willfully used a counterfeit mark as a matter of law. Summary judgment is not appropriate.

### B.     Protective Order- Ex Parte Communications

Plaintiff requests that this Court issue a Protective Order precluding any *ex parte* contact with Lorillard employees.  Michigan Rule of Professional Conduct 4.2 provides "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a party whom the lawyer knows to be represented in the matter by another lawyer, unless the lawyer has the consent of the other lawyer or is authorized to do so."  The Official Comment to Rule 4.2 explicates that the ban on *ex parte* communications with a represented party extends to employees or agents of an organization with managerial responsibility or those whose acts may be imputed to the organization for purposes of civil or criminal liability.  Similarly, in *Uphohn v. United States*, the Supreme Court rejected the "control group" test in the context of the application of the attorney-client privilege and held that middle and lower level employees can bind the corporation for actions within the scope of their employment.  499 U.S. 383, 391 (1981).

Plaintiff alleges that counsel for Defendants attempted to gain information related to the lawsuit from an employee of Plaintiff without Plaintiff's permission. On or about August 8, 2006, Linda Harding, a Lorillard Sales Representative, visited K&S Party Store (hereinafter "K&S"), which is owned by Lou Kamposh, also the owner of Chesterfield Shop. (Pl.'s Mot. For Protective Order at 2; Ex. 1, Aff. of Linda Harding). While Ms. Harding was behind the counter rotating and inspecting K&S's inventory, another man appeared and identified himself as Defendants' attorney. *Id.* This individual asked Ms. Harding whether he could ask her a few questions and, because the subject of the questions was unidentified, Ms. Harding responded, "yes." *Id.* He then said something to the effect of: "Lou got caught with 14 packages of counterfeit cigarettes in another of his stores and Lorillard wants $5,000.00 a pack for trademark infringement. Lou can't afford that." *Id.* The individual further asked Ms. Harding what she did if she found counterfeit cigarettes, whether she exchanged them out, and whether she did anything with them. *Id.* Ms. Harding, feeling uncomfortable being asked these questions, responded to each by saying, "I call my boss." *Id.* As Ms. Harding was leaving K&S, the individual said, "It's not like I'm going to subpoena you." *Id.*

Defendants adamantly deny that any verbal exchange between a Lorillard employee and Defendants' counsel, Gregory M. Kelly, ever occurred on August 8, 2006. Indeed, Defendants assert that Mr. Kelly was not at K&S on the date in question.[1] *Id.* Defendants note that their counsel did meet with Mr. Kamposh on August 9, 2006, for a pre-arranged status report meeting.

Although Plaintiff has demonstrated that Ms. Harding is an individual who may fall within

---

[1] Defendants attach the Affidavit of James Mies, wherein he states that he met with Mr. Kelly at his residence in Birmingham, Michigan, to discuss an unrelated pending legal matter from approximately 1:00 p.m. to 3:00 p.m. on August 8, 2006. Defendants also attach a Notice to Appear at 8:30 a.m. at the 48th District Court in Bloomfield Hills, Michigan, addressed to Gregory M. Kelly.

7

the definition of "a party whom the lawyer knows is represented," as required by Michigan Rule of Professional Conduct 4.2, Plaintiff has not sufficiently shown that it was Defendants' counsel that communicated with Ms. Harding. The Court is concerned with the possibility that *ex parte* communications have occurred, however, Defendants have presented convincing evidence that Mr. Kelly was not present at K&S on the date in question.[2]

Notwithstanding the above findings, Plaintiff's Motion for a Protective Order is granted, as there is evidence that someone purporting to act on behalf of Defendants and communicating with an employee of Plaintiff about the case at bar. *See* MRCP 4.2.

**C.     Sanctions**

Plaintiff asks that the Court impose sanctions upon Defendants' counsel for engaging in improper and unethical actions during this litigation. Plaintiff asserts that because Defendants' counsel relied on confidential settlement discussions in its Response to Plaintiff's Motion for Summary Judgment and engaged in *ex parte* communications, counsel should bear the costs Plaintiff incurred in bringing the Motion for a Protective Order.

For the reasons discussed above, the Court does not find that Defendants' conduct warrants sanctions.

---

[2] The Court takes note of Plaintiff's argument that Defendants' Response to Plaintiff's Motion for a Protective Order fails to fully explain Ms. Harding's story, which Plaintiff asserts Ms. Harding would have no reason to fabricate. (Pl.'s Reply to Def.'s Resp. To Mot. For Protective Order at 1-2). However, since Plaintiff was unable to provide the Court with concrete information as to who the individual who identified himself as Defendants' counsel was, the Court is unable to find that *ex parte* communications occurred. *Id.*

Accordingly,

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment on the Issue of Liability **[Docket No. 15, filed January 13, 2006]** is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Protective Order **[Docket No. 28, August 25, 2006]** is GRANTED.

IT IS FURTHER ORDERED that a Status Conference will be held on January 9, 2007 at 3:15 p.m.

s/ DENISE PAGE HOOD
DENISE PAGE HOOD
United States District Judge

DATED: December 1, 2006